Case number 245024, USA v. Amber Wise. Argument not to exceed 15 minutes per side. Ms. Salinas and Ms. Krejci, you may proceed for the appellate. Good morning. May it please the court. My name is Melissa Salinas, and I wanted to thank the court for allowing recently graduated law student Emily Krejci to argue the case. Thank you. Good morning, your honors, and may it please the court. Emily Krejci, appearing on behalf of defendant appellant Amber Joy Wise. I respectfully request three minutes for rebuttal. Fine. The government's case against Amber Wise really turned on one thing, whether or not the jury believed the testimony of Breonna Heatherly. At trial, Breonna was the only link between Amber and the drug conspiracy. However, the government only sought to corroborate her testimony through two things. First, a set of texts from BR, an unidentified, non-testifying drug buyer. And second, texts from Kelly Heatherly, Breonna's mother. Both sets of texts were errantly admitted, and their admission substantially affected the outcome of Amber Wise's trial. Beginning on the issue of BR's texts, while we maintain that the context exception was improperly utilized to admit these texts, I'd like to focus my argument today on the Rule 403 issue. Starting on the probative value, on page 20 of their brief before this court, the government admitted that the probative value of BR's text was quote, unquote, slight. Specifically, they said that any difficulty the jurors had would have in interpreting Breonna's text without BR's text would have been slight. When something is admitted for context, its purpose is essentially how much intelligibility it lends to the rest of the conversation. When that is only slight intelligibility, it stands to reason that the probative value of the text are also only slight. Now weigh that with the prejudice in this case. Does the prejudice have to be unfair prejudice under 403? Yes, Your Honor, it does have to be unfair prejudice. It can't simply be bad for the client. It needs to be unfair, and that needs to substantially outweigh the probative value. Specifically here, when we look at the prejudice, the omission of BR's text alongside Breonna's invites jurors to make a critical inference that Amber Wise was a known drug supplier. Specifically, once this implication is made, it colors the rest of the government's little circumstantial evidence. Everything else is then painted through the lens that Amber is a known drug supplier. Importantly, this is known by whom? Known by BR, and I think the implication then is to reason that if BR, a regular drug buyer, as Breonna testified, knows that Amber is the drug supplier. Aren't there some texts in the evidence from Breonna Heatherley to Ms. Amber that relate to drug distribution? There are actually no texts from Breonna to Amber about drug distribution. In this conversation with BR, there's a text from Breonna, and this is... But you're not challenging the omission of Breonna's text. No, you're not, Your Honor. So she's acknowledging Ms. Wise as a drug supplier, isn't she? Yes, she is. Well, doesn't that cut against your whole argument about being a known drug supplier? That you already have this evidence in. So how is it unfairly prejudicial to have another text saying basically the same thing? So in this conversation with BR's text, we have BR asking, seemingly for drugs, he doesn't explicitly say it, he says he needs some help. And I think the critical text Your Honor is referring to is Breonna responding, saying that Amber is coming with more. Like Your Honor said, we do not contest that that is admissible evidence under the co-conspirator exception of Rule 801D2E. However, in the context, or in BR's text, we're also admitted to give context to that statement. And when you look at his next statement, he doesn't question who's Amber, what's she coming with, do you understand that I'm asking for drugs? It seems to stand to reason that he understands who Amber is, that Breonna understood that he's looking for drugs, and that there's this understanding between the parties in this conversation of who Amber is. The unfair prejudice is that more people know that she's a drug supplier than just one? Is that the point? Not exactly, Your Honor. It is that she's a well-known drug supplier is the inference that the text necessarily invites jurors to reason to get to. However, it's specifically the way it's used in this scenario when you consider how it's used to corroborate Breonna's testimony. It's something like corroboration by inference. Breonna is the only one that the government puts forward to say that Amber is connected to this drug conspiracy. There are only three witnesses in this case, the lead investigator, Don McKay, the electronics analyst, and Breonna Heatherly. The government presents no one else who can say, I know Amber, she's a well-known drug supplier, she supplies me drugs. Nobody else testifies to that. What about the evidence of the money transfers? Doesn't that tie Ms. Wise into being a drug supplier? Well, I think a rational trier of fact or a juror could find that to be so. But through Breonna's testimony, she's the one that specifically testifies and the only one that testifies that those wire transfers are evidence of a drug conspiracy. Specifically in the defense, Harvey Horn and Amber Wise both testified, and they said that those wire transfers were money for child support. And if you look at the amounts, it was on average $1,400 a month. They testify that this was over a $3 million drug conspiracy. I think with those facts, a reasonable trier of fact could side with the defense that they were child custody or child support payments. But when Breonna is the only one to testify that they are evidence of a drug conspiracy, it all comes back to whether or not the jury finds Breonna to be a credible witness. Was an instruction given about the nature of this corroboration that it was only used to show context? Yes, Judge Moore, a limiting instruction was given. Why doesn't that adequately protect your client? Well, as this court said in Burns, the presumption that a limiting instruction is sufficient can be overcome where the evidence has been admitted, and it is so prejudicial that a defendant's right to a fair trial is compromised. I believe this is one of these cases where there's such little evidence against Amber, no wire taps, no surveillance, no controlled buys. Everything the lead investigator testified to was all about Breonna Heatherly. They didn't even know about Amber Wise until Breonna was arrested and she gave them Amber's name. So specifically, when you consider that context of how little evidence there is in this case, we believe the admission of this text overcomes the limiting instruction. And specifically, I'd like to point out that this is how the government always intended to utilize BR's texts. In the final pretrial conference, the government argued, quote, excuse me, that the quotes, the texts were, quote, direct evidence of Amber's involvement in the conspiracy, end quote. When they weren't able to get them in for their truth, they shifted to getting them in for context. Is that improper for the government if it loses for the truth to say, well, you know, there's another reason why we can have this with a limiting instruction for context? No, Your Honor, it's not improper, but I do think it sheds light on why the government exactly wanted these texts in. And if we actually look at how the texts were utilized at trial, them coming in for context really did not change how they were utilized. In this parlays into my argument about why this is not a harmless error. Specifically, the very first thing the government said in its closing argument was look at these texts, look at this conversation. In fact, the prosecution stated, quote, the text, excuse me, quote, sums up the entire drug trafficking conspiracy. Again, we can see that Breonna's text here is admissible, and that can be used in the government's closing. However, the only way a juror could understand it as summing up the entire drug trafficking conspiracy is if they take BR's text for their truth. And that's exactly what the government asked the jurors to do. If you look at another part of their closing statement, very first paragraph of substantive argument, they say, quote, this is Breonna Heatherly messaging a drug user that wants more drugs, end quote. So they did not entertain the idea that maybe BR didn't want drugs. If this is not being admitted for its truth, that would have to be, as it was under the context exception, that would be how the government argued those texts. But they didn't. They argued them for their substantive truth and for their substantive value, and that is harmful error. The Ninth District, in a recent case, unpublished opinion, U.S. v. Davis, said exactly the same thing in a similar case. They said that where the government argued texts in a drug conspiracy, these texts were admitted under the context exception, as here, that when they argued them as substantive evidence and in their closing, that that was harmful error. We posit that. I know you weren't the trial lawyer. Did this trial lawyer object to the government's characterization, as you put it, of using these statements for truth? No, they did not, Your Honor. They did not object. But they did maintain their objection of the admission of the text, in general, at the beginning of the trial. And so that is why this is under. Was the Davis case a plain error review case? Your Honor, I'm not sure. In that case, specifically, I'm not sure what standard of review it was under. But the context exception was actually something that was raised in appeals. It was the government's argument that it's not harmful error because it could have also been accepted for context. And the Ninth Circuit, in that case, rejected that opinion. In my last 90 seconds, I'd like to briefly move on to the second issue of Kelly Heatherly's text, if Your Honors have no further questions on the text from BR. Briefly, the text from Breonna's mother, Kelly, should have never been admitted. And the court plainly erred in its n-right determination that Kelly was a co-conspirator. This is a preponderance of evidence standard. And that preponderance of evidence bar was simply not met here. Implicit in the n-right determination is also the finding that the declarant was a member of the same conspiracy as the defendant. And here, there simply was not evidence of that. As this court said in United States v. Wheat, it repeated the long-held premise that a drug buyer is not sufficiently a co-conspirator for the purposes of a conspiracy conviction. Here, the text from Kelly Heatherly only support that she was a drug buyer, a drug user, not a co-conspirator. And even if she was deemed a co-conspirator, the third prong of the n-right determination necessarily requires that the statements admitted for their truth, they also must be made. What are you contending text in this exhibit from the mother would constitute a statement asserted for the truth of the matter? Basically, are any of these actually hearsay statements? Or are they really not being admitted for the truth of the matter asserted? Well, they were permitted to be admitted under federal. What particular statement would you point to to say falls into the category of classic hearsay? Well, they were all admitted for their truth. I think if you look at, I think the statements asking for drugs from her daughter could be considered classic hearsay. It was admitted for its truth. A juror could take it to understand that she actually was looking for drugs from her daughter. And specifically, when it comes to what implicates Amber, she offered a trade. She said, I can give you some purses. Ask Harvey Horn, who was Brianna's roommate, boyfriend at the time, and Amber's ex-husband or father of her children. Ask him if he wants to take some purses in exchange for some drugs. And even though that doesn't directly say, ask Amber if she will exchange some drugs with me, it necessarily brings Amber into the fold of the conspiracy. And since they were admitted under 801 D2E, that necessarily allows jurors to take that for its truth. And that's why it should have been admitted despite the unright determination. Thank you. I'll be prepared in rebuttal. Thank you. May it please the court, Sam Fitzpatrick for the United States. The district court properly admitted into evidence the text messages in Exhibits 36 and 37. And at the outset, I would like to start with counsel asserted that the only corroboration of Brianna's testimony came in the form of the text messages from BR and the text messages from Kelly. And that's simply not the case. And I'd like to give the court a quick overview of all the different evidence that corroborated Brianna's testimony. Number one, Brianna's own text messages corroborated her testimony. She testified she had firsthand knowledge of this conspiracy, and she told the jury exactly how the conspiracy worked, why it supplied the fentanyl, Horne divided it up, and then Brianna distributed it. And Brianna's own text messages corroborated that, like her text message to the drug customer. Amber is actually on her way from Detroit with more. She won't be here till later. He'll give me some when she gets here, and I'll help you. And her text message to Kelly, her mom. Amber is coming in, and he just said he'll send you something tonight. In addition to Brianna's own text messages, there was the records of the wire transfers. More than $60,000 sent over more than 100 wire transfers to Wise and to her daughter. Was Wise's daughter a minor? I'm not certain about the answer to that, Your Honor. I know that she did plead guilty to the, um. The daughter did? The daughter did. She pled guilty to the money laundering conspiracy. Presumably she was not a minor, I guess. Yes, Your Honor. More corroborating, um. More corroborating evidence. So why did you need to, why did you need to have this text vis-a-vis the BR? Well, Your Honor, this is, this is classic contextual information that the purpose of it is to help the jury understand the evidence. And it's this sort of thing, these are routinely admitted in trials, especially in drug conspiracies. If you think about how confusing it is to a jury to just see half of a conversation, it helps the jury to understand the evidence. It helps it to make it more comprehensible. But did, did you need to admit BR's statement about naming Amber as opposed to having the rest of BR's statement admitted for context? BR never named Amber, Your Honor. Brianna was the only person who named Amber. In fact, BR never once said Amber's name, and BR didn't implicate Amber at all. So the United States, if the United States had offered BR's text messages for the truth of the matter asserted, that would have meant that we were trying to prove to the jury that, in fact, BR was out of drugs and needed more. But that wasn't the point of his, of his text message. The point of his text message was to show the jury what prompted Brianna to write, I would if I had any. Amber's on her way from Detroit with more. When she gets here, I'll help you out. And so this is just helping the jury to give context to an admissible statement. Brianna's statement is admissible as a co-conspirator, a statement of furtherance of the conspiracy, that's 801 D2E. BR's text messages are admissible to help the jury to understand those admissible text messages. And one of the key points here is that the rationale behind the rule against hearsay is a recognition that out-of-court statements do pose particular hazards because it's often difficult to test the truth of those statements from an out-of-court declarant. But when the statement's not offered for its truth, then the credibility of the speaker is not at issue. So your opponent was arguing that at closing, the government emphasized the truth of BR statements. Is that correct? Or if, and if so, why would you emphasize the truth of it? No, Your Honor. In fact, I think what, in closing, what was emphasized was Brianna's text message. And the, at closing, I could just read it here real quick. This case, the single deed in this case, this text message, this text message from April 4th, 2020 that sums up the entire drug trafficking conspiracy. The attorney is referring to a single text message. He's referring to Brianna's text message. This is Brianna Heatherly messaging a drug user that wants more drugs and she doesn't have any and she says, and then he quotes the text message. Now, he did say that wants more drugs. He probably should have said, who says he wants more drugs? Because that was the reason that it was, that this text message was introduced. But if you look at the context of what he's saying at closing, his focus is clearly on Brianna's text message. And that was, it was an important text message. Brianna's testimony was important testimony. And it was corroborated not only by her text messages, not only by the wire transfer records, but also by location data from her phone that showed she made numerous trips to Detroit and to Ohio. Her testimony was corroborated by phone records that showed 87 communications between her and Wise. The surveillance photo from April 6th, 2020, that was especially important because that came two days after Brianna's text message that Amber's on her way from Detroit with more. Two days later, law enforcement captures a surveillance photo of Wise in Knoxville in the parking lot in front of the apartment. In addition, the search warrants showed drugs. The money counter and digital scales were found in the apartment that was used by Brianna, by Harvey Horn, and by Wise. And also the testimony from Wise and Horn, neither of them left the witness stand with their credibility intact. And so to say that only BR's text messages and only Kelly's text messages corroborated Brianna's testimony, it simply is not the case. And Brianna, her testimony was compelling. And she was credible. She was consistent. And her testimony, she had nothing to gain. She had already been convicted, she had already been sentenced, and she had already served her sentence. So she had nothing left to gain. Was there any condition put on Brianna? Did she agree that she would testify as part of her agreement with the government and the sentence that Brianna got? I think the answer to that question is yes, Your Honor, just based on the standard practice of some agreements. But the fact that she had already served the custodial portion of her sentence, and as a practical matter, she had already received the benefit of her cooperation, and so there was no more benefit that she could receive past that. And contextual statements like the ones here are routinely admitted by this court. One example is, just three examples, there's lots of examples in the United States brief and in the defendant's brief, but Jafal and Young and Talley, these are admitted as a matter of course. I would like to discuss also the issue under Federal Rule of Evidence 403, since counsel focuses on that. Number one, I think it's important to keep in mind the standard of review here. The district court's decision, that determination that the evidence did not violate Rule 403, that's reviewed for abuse of discretion, and this court looks at it in the light most favorable to the district court's decision to admit it. The court gives it the maximum reasonable probative value and the minimum reasonable unfair prejudice. And under that standard, the drug customer's text messages easily met the requirement of Rule 403. As your honor pointed out, there was prejudice in the sense that any evidence that raises an inference of guilt is prejudicial to the defendant, but there's nothing unfair about giving the jury sufficient context to understand admissible evidence, helping the jury to understand what was being said and why it was being said. Also, the limiting instructions. The court gave not one, but two limiting instructions. The first one was when the text messages were first mentioned by one of the law enforcement witnesses, and then the second time was immediately before the text message with BR came up during Brianna's testimony. And what did the limiting instructions say exactly vis-a-vis BR? I don't have the verbatim language in front of me, your honor, but the district court instructed the jury, consider these text messages only for their context and not for their truth. And that was referring to BR specifically, because Brianna's text messages were admissible right for the truth. Yes, your honor, correct. And this court presumes that limiting instructions are effective. This court presumes that juries are able to listen to the judges' limiting instructions and follow them, absent some sort of specific evidence to the contrary. And here, I just don't think that Wise has presented any indication in the record that the jury would disregard the judges' two limiting instructions. In addition, the district court did not plainly err when it admitted the text messages from Kelly Heatherly. Again, I think the standard of review is important here. This court finds plain error only in exceptional circumstances, only when an error is so clear and so obvious that a district court was derelict to have permitted it. Was the Kelly material admitted as under the co-conspirator exception? Yes, your honor. Why was it in furtherance of the conspiracy? Well, your honor, primarily because a statement in furtherance of a conspiracy could take many forms. And in a drug conspiracy in particular, any statement that identifies the participants and their roles in the conspiracy, those are made in furtherance of the conspiracy. Another example, a statement identifying another co-conspirator as a source of narcotics meets the in furtherance requirement. That's Rios. For yet another reason, statements that are intended to encourage or assist someone in participating in a conspiracy also meet the in furtherance requirement. And so, here Kelly's text messages clearly identified Horne as a drug supplier in the conspiracy. And they also suggested Wise at one, and I'm speaking specifically about Kelly's text message, see if he would be interested in trading for those two Coach purses and a Gucci purse for Amber or his girls. And so... So if, hypothetically, Kelly were just a buyer, would that kind of a statement be in furtherance of a conspiracy? If she were a drug buyer and not a co-conspirator? Yeah, right. Well, no, because I think the prerequisite to making a statement in furtherance of the conspiracy is that you are a... You're a co-conspirator. Yes, Your Honor. So it hinges on that, that Kelly is a co-conspirator. Yes, I think that's right. And if you look at the evidence here, there was ample circumstantial evidence that Kelly participated in this conspiracy. Number one is her text messages show that she knew all about this conspiracy. She knew her daughter's involvement in it. She knew about Horne's involvement in it. She knew about... Does that make a mom a co-conspirator that they know that their kids are doing bad things? Not by itself, Your Honor, but the fact that she wired over $7,000 to Wise's daughter... She's a user. Kelly's a user, right? She is. Yes, Your Honor. So why doesn't all of this just show she's a big buyer for herself? I mean, $7,000 over a period of time may not be that much. Well, I think Brianna's testimony... Brianna's testimony was that those were drug payments and that Kelly made drug payments to... Were they for her own use, Kelly's own use? We don't know. Well, Your Honor, I mean, I think it could be... The question is, could it be inferred from her conduct? Could the district court have reasonably inferred that from her conduct? That more probable than not, Kelly was not just a user, but she was a participant in the conspiracy. And I think when you look at the text messages, plus the wire transfers, $7,000, four separate transfers, not just to Wise, but to Wise's daughter. And then if you also look at Brianna's testimony, that Kelly accompanied her during her trips to Detroit, and that Kelly would be able to testify that these drug transactions took place when Brianna went to meet Wise to pick up drugs to bring back to Knoxville. And so if you look at those three things, I think the district court had ample evidence to reach the conclusion that Kelly was a conspirator, a co-conspirator, and that her statements were in furtherance. And certainly under the plain error standard, it's not clear or obvious that the district court erred in that respect. Were there other customers paying by way of wire transfer? Yes, Your Honor. And that was an important piece of evidence at trial too, because there was during cross-examination of Wise, she was asked, why are these other five people wiring you hundreds or in the aggregate thousands of dollars from Knoxville? And for at least some of them, Wise said she didn't know who they were. And so that certainly raised an inference of her involvement in the drug conspiracy and money laundering conspiracy as well. I can see that my time is up. Thank you. Thank you. All right, counsel, I know there's a number of things you probably want to address. One thing that I'm just having a little bit of problems with is one of the things that brother counsel pointed out here, which is our precedent says that we presume that jurors are able to follow jury instructions. So I guess I'd ask you again, and I think either Judge Moore or Judge Bush might've asked you this, why were the limiting instructions that were given to the jury here not sufficient? Yes, Your Honor. I think my opposing counsel said that there was no evidence on the record of that. And on one hand I say, there's no evidence on the record of what anything the jury considers or does. So I think that's an insufficient standard. But we are to presume that they do follow the instructions though. So with the presumption there, I think you have to come forward with something, right? Yes, and that thing is the government's closing. Specifically, when you look at exactly how it was worded, and I know opposing counsel quoted it, and I do think it's important that it's not to say and to acknowledge that it's not directly apparent on the record, but I think it's possible that the government in its closing actually used the whole exhibit. The government in its closing started waxing hypothetical about a picture is worth a thousand words. And then it says, this is the thing that's worth a thousand words. So it's possible from my reading of the record that he actually was showing the exhibit, displaying it somehow. And the exhibit necessarily includes BR's text. So even if the closing- Well, it wasn't inadmissible. It was that the jury could only use it for contextual purposes. So what would be wrong with using it and just letting them know that, hey, you can only consider it for these other purposes? I think the issue with that, Judge Davis, is that they didn't use it for the contextual purposes in its closing. Again, it says that the drug buyer wants more drugs. It didn't say, as the government now posits, that he should have said, oh, he asked for more drugs or he was thinking about getting drugs. He said he wants more drugs. That is BR's text for their truth. That is why this is not a harmless error. And that is also what we, our argument is that it overcomes the limiting instruction because that compromised Brianna's- Undermined the limiting instruction by the words that he used, is what you're saying. Yes, the limiting instruction was given and then the government argued against it. That's correct, Judge Davis. With the remainder of my time on rebuttal, I'd quickly like to note one thing that opposing counsel said in relation to Judge Moore's question. He answered with, well, Brianna testified to it or it was Brianna's testimony. And that's exactly the point. All these issues that we have with Kelly's text, with what the wire transfers were about, it all goes through Brianna and whether she was a credible witness. He says that she was credible, that she was compelling. And your honors, I just disagree with that. She had every reason to lie on that stand. He said that she had already served her sentence. That sentence was time served. She was the subject of the investigation. She was arrested. She gave them more information. She gave them Amber Wise's name. She struck a plea deal. Now, I don't believe that there was a condition in the plea deal that she needed to testify, but as it was testified to by the lead investigator, it was understood that if she helped them, she'd get a favorable plea deal. And that she did. And for those reasons, I would argue her credibility wasn't intact. And the jury could have easily understood her to be an uncredible witness and chosen to believe Amber Wise and Harvey Horn instead. Thank you, your honors. We just ask that you reverse and vacate her conviction. Thank you both. And we understand that you're a recent graduate of the University of Michigan Law School, and you've done an excellent job. We always appreciate the University of Michigan Law School and their work in our cases. And we thank you for your work. We thank you for your work as well, but it's always a pleasure to have an excellent, almost former law student arguing in front of us. So we thank you both, and the case will be submitted.